Priority ✓
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

JUL 11 2000

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware corporation,<br><br>            Plaintiff,<br><br>   v.<br><br>ULTRA COACHBUILDERS, INC., a California corporation,<br><br>          Defendant. | Case No. EDCV 00-00243-VAP(RCx)<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

Plaintiff's Motion for Preliminary Injunction came before the Court for hearing on June 5, 2000. After reviewing and considering all papers in support of, and in opposition to, the Motion, and hearing the arguments advanced by counsel, the Court orders that the Motion is GRANTED in part and DENIED in part.

## I.  Background

Plaintiff, Ford Motor Company, brings this suit for injunctive relief and treble and punitive damages on claims of federal and common-law trademark infringement, false designation of origin under the Lanham Act, unfair competition under California Business

ENTER ON ICMS

JUL 12 2000

1  and Professions Code Sections 17200 through 17208, and federal

2  trademark dilution.  See generally Compl.[1]  Defendant, Ultra

3  Coachbuilders, Inc., is in the business of converting luxury cars

4  and sport utility vehicles into stretch limousines.  See Def.'s

5  Answer at ¶ 14; Compl. at Ex. C.  Among the car makes and models

6  Defendant converts into limousines are Ford Excursions, Lincoln

7  Navigators, and Lincoln Town Cars.  Id.

8

9      Plaintiff is the registered owner of the marks "Ford,"

10 "Lincoln," the Ford "script-in-oval" logo, the Lincoln "star" logo,

11 and the model names "Town Car," "Navigator," and "Excursion."  Id.

12 at ¶ 7; Ex. A.  Plaintiff also claims trade dress protection for

13 what it claims is the distinctive design of the front grille used

14 on Lincoln Town Cars and other vehicles.  Id. at ¶ 8.  The grille

15 is not a registered trademark.  Finally, Plaintiff claims trademark

16 protection for the mark "QVM" as the name of Ford's authorized

17 limousine converter program.  Id. at ¶¶ 9-11; Ex. B.  "QVM" stands

18 for "Qualified Vehicle Modifier."  Id. at Ex. B.  Plaintiff has a

19 trademark registration application pending for the "QVM" mark in

20 the Patent and Trademark Office.  Id. at ¶ 9.  Defendant also had

21 applied to register the "QVM" mark, but stopped using that mark in

22

23

24      [1]    Plaintiff has submitted no evidence in support of its
        Motion other than its verified Complaint and the exhibits attached
25      thereto.  The Complaint is verified by Susan N. McFee, counsel at
        Ford Global Technologies, Inc., a wholly-owned subsidiary of
26      Plaintiff.  See Compl. at 26.  The Court may consider allegations
        in a verified Complaint in ruling on a Motion for Preliminary
27      Injunction.  See Republic of the Philippines v. Marcos, 862 F.2d
        1355, 1363 (9th Cir. 1988) (citing K-2 Ski Co. v. Head Ski Co., 467
28      F.2d 1087, 1088 (9th Cir. 1972)).

1  light of this case.  See Decl. of Andrew Torres (Torres Decl.") at

2  ¶ 18.

3

4      Defendant converts Plaintiff's vehicles into limousines; the

5  limousines bear the original Ford trademarks.  See Def.'s Answer at

6  ¶¶ 14, 16.  Defendant is not authorized by Ford under its "QVM"

7  program.  Id. at ¶ 15.  Plaintiff moves for a preliminary

8  injunction prohibiting Defendant from infringing on or diluting any

9  of the above-mentioned marks.  See Notice of Motion at 2.

10

11                         **II. Proceedings**

12      Plaintiff filed its Motion for Preliminary Injunction on April

13  25, 2000.  The Motion and Memorandum of Points and Authorities were

14  served with the Complaint on Defendant personally through its

15  president on April 24, 2000.  The Amended Notice of Motion was

16  served personally on Defendant's president on April 25, 2000.  The

17  Motion was originally set for hearing on May 22, 2000.

18

19      On May 19, 2000, Defendant filed an Ex Parte Application to

20  strike Plaintiff's Motion or, in the alternative, to continue the

21  hearing to July 10, 2000 and set a briefing schedule.  The Court

22  denied the request to strike Plaintiff's Motion, but continued the

23  hearing on Plaintiff's Motion to June 5, 2000 and set a briefing

24  schedule.  See May 19, 2000 Minute Order.

25

26      Defendant filed its Opposition, supporting Declarations, and

27  Appendix of Authorities on May 26, 2000.  Plaintiff filed its Reply

28

1 | and Objections to Defendant's Declarations on May 31, 2000.[2]
2 | Defendant filed its Response to Ford's Objections on June 1, 2000.
3 |
4 | ### III. Discussion
5 | Plaintiff moves for a preliminary injunction preventing
6 | Defendant from (1) diluting and infringing any of Plaintiff's
7 | trademarks by using them on converted limousines and in
8 | advertising, and (2) from using any false designation of origin or
9 | false description which can, or is likely to, cause the public to
10 | believe Defendant's conversions are associated, affiliated, or
11 | connected with Ford. See Pl.'s Mot. at 2.  "A plaintiff is
12 | entitled to a preliminary injunction in a trademark case when it
13 | demonstrates either (1) a combination of "probable success on the
14 | merits" and "the possibility of irreparable injury" [footnote
15 |

16 |        [2]      Plaintiff objects to portions of Defendant's Opposition
17 | which are merely argument.  The objections to argument are
     | overruled.  Plaintiff also objects to the statements in Defendant's
18 | Declarations underlying and supporting the objected-to assertions
     | in the Opposition.  To the extent these objections are to the
19 | Declarations themselves, Plaintiff's objections (1) and (2); (3)
     | insofar as it objects to paragraph 3 of the Torres Declaration
20 | statement that "All would understand that the car made by the
     | manufacturer was altered by someone else to make a limousine;" (4)
21 | to the extent that paragraph 7 of the Torres Declaration speculates
     | as to the knowledge of consumers; and (5) as to paragraph 16 of the
22 | Torres Declaration wherein Mr. Torres declares "It is my
     | understanding that Lincoln had advertised in Limousine Digest for
23 | almost 10 years prior to withdrawing its ads [sic.]" are sustained.
     | Plaintiff's objection (6) to the editorial statements of Ric Cohen
24 | in Limousine Digest attached as Exhibit 4 to the Torres Declaration
     | is also sustained.  Plaintiff's objection (7) does not state an
25 | evidentiary basis for the objection and is overruled.  Objection
     | (8) is likewise unsupported by any evidentiary basis with the
26 | exception of a hearsay objection to the statements reportedly made
     | to independent Lincoln dealers.  Such statements are not offered to
27 | prove the truth of the matter asserted, however, but to show that
     | Plaintiff had knowledge of the asserted fact.  Thus, objection (8)
28 | is overruled.  Plaintiff's objections (9) and (10) also are
     | overruled.

1 omitted] or (2) the existence of "serious questions going to the
2 merits" and that "the balance of hardships tips sharply in his
3 favor." GOTO.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1204-
4 1205 (9th Cir. 2000).  The Ninth Circuit has explained that the
5 articulation of two separate prongs of probability of success on
6 the merits and balance of hardships is somewhat misleading in the
7 trademark context because "'irreparable injury may be presumed from
8 a showing of likelihood of success on the merits.'"  Id. at 1205
9 note 4 (quoting Brookfield Communications, Inc. v. West Coast
10 Entertainment Corp., 174 F.3d 1036, 1066 (9th Cir. 1999)).  "This
11 presumption effectively conflates the dual inquiries of this prong
12 into the single question of whether the plaintiff has shown a
13 likelihood of success on the merits."  Id.

14

15 **A.   Trademark Infringement, False Designation of Origin, and**
16      **Unfair Competition**

17      Plaintiff's claims for federal trademark infringement under 15
18 U.S.C. § 1114 (first claim for relief), false designation of origin
19 under 15 U.S.C. § 1125 (third claim for relief), common-law
20 trademark infringement (fourth claim for relief) and unfair
21 competition under California Business and Professions Code Section
22 17200 et. seq. (fifth claim for relief), all require the same
23 analysis.  See GOTO.com, 202 F.3d at 1204 n. 3 (same standard
24 applies to registered marks under 15 U.S.C. § 1114 and unregistered
25 marks under 15 U.S.C. § 1125); Century 21 Real Estate Corp. v.
26 Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988) (likelihood of
27 confusion is also the applicable standard for California common-law
28 trademark infringement and statutory unfair competition).

1 Plaintiff must prove a valid trademark and likelihood of confusion
2 from Defendant's use of its mark.  <u>Quality Semiconductor, Inc. v.</u>
3 <u>Qlogic Corp.</u>, 31 U.S.P.Q. 2d 1627, 1629, 1994 WL 409483, *1 (N.D.
4 Cal. 1994) (citing <u>Century 21 Real Estate</u>, 846 F.2d at 1178; <u>Levi</u>
5 <u>Strauss & Co. v. Blue Bell, Inc.</u>, 778 F.2d 1352, 1354 (9th
6 Cir.1985)); <u>see also</u> <u>Petro Shopping Centers, L.P. v. James River</u>
7 <u>Petroleum, Inc.</u>, 130 F.3d 88, 91 (4th Cir. 1997) (citing 15 U.S.C.
8 § 1114(1); <u>Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.,</u>
9 <u>Inc.</u>, 43 F.3d 930 (4th Cir. 1995)).

10
11     **1.   Validity of the various marks**
12     Plaintiff claims trademark protection for nine items: "Ford,"
13 "Lincoln," the Ford "script in oval" logo, the Lincoln "star" logo,
14 "Town Car," "Navigator," "Excursion," the front grille on Lincoln
15 cars, and "QVM."  <u>See</u> Pl.'s Mem. P. & A. at 2:7-15.  All of these
16 marks are registered with the United States Patent and Trademark
17 Office except the Lincoln grille and "QVM."[3]  <u>See</u> Compl. at ¶7-9,
18 Ex. 1.  Registered marks are prima facie evidence of the validity
19 of the mark.  <u>See</u> 15 U.S.C. § 1115(a).  Unregistered marks are
20 also eligible for protection (although not on Plaintiff's first
21 claim for relief under 15 U.S.C. § 1114), but are not presumed
22 valid; instead Plaintiff must show these marks are distinctive.
23 <u>See</u> <u>Secular Organizations for Sobriety, Inc. v. Ullrich</u>, __ F.3d
24 __, 2000 WL 675113, *4 (9th Cir. 2000) ("An identifying mark is
25 capable of being protected under the trademark laws if it is either
26 inherently distinctive or if it is descriptive and has acquired

27 ─────────────
28    [3]   Plaintiff has applied for, but not yet received, a
registration on the "QVM" mark.  <u>See</u> Compl. at ¶ 9.

6

1  distinctiveness through secondary meaning.") (citing
2  Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d
3  1042, 1047 (9th Cir.1998)); See also Two Pesos, Inc. v. Taco
4  Cabana, Inc., 505 U.S. 763, 769, 112 S. Ct. 2753, 2758, 120 L. Ed.
5  2d 615 (1992).

6

7      Plaintiff has made no effort to show that the Lincoln grille
8  or "QVM" are either inherently distinctive or have acquired
9  secondary meaning.  Plaintiff offers only conclusory allegations in
10 its verified Complaint that the grille is distinctive.  See Compl.
11 at ¶ 8.  "QVM" stands for "Quality Vehicle Modifier."  See Pl.'s
12 Mem. P. & A. at 3:27.  Thus, the mark is a self-laudatory term
13 describing an alleged characteristic of the modifier, and as such
14 is only a descriptive mark.  See 2 J. Thomas McCarthy, McCarthy on
15 Trademarks and Unfair Competition § 11:17 (2000).  Moreover,
16 Plaintiff prohibits the use of "QVM" as a source identifier to the
17 relevant consuming public, as Plaintiff itself chooses to define
18 it, specifically livery rental end-users, e.g., promgoers and
19 business people looking for a safe and comfortable ride to the
20 airport.  See Pl.'s Mem. P. & A. at 15-16.  "Ford prohibits even
21 certified QVM™ converters from using the QVM™ mark or badge on any
22 automobiles."  Pl.'s Mem. P. & A. at 5:25-6:1.  Therefore,
23 Plaintiff has failed to show that the unregistered marks are
24 protected; thus, only the registered marks are relevant to its
25 trademark infringement and related claims.
26 ///
27 ///
28 ///

1       **2.    Likelihood of confusion regarding the original badges**
2              **Defendant leaves on its converted limousines**
3       Defendant uses Plaintiff's trademarks in two different ways:
4  it leaves the original badges on the cars it converts into
5  limousines, and it uses the marks in altered badges and in
6  advertisements.
7
8       The Ninth Circuit has developed eight factors to guide the
9  determination of likelihood of confusion: the so-called Sleekcraft
10  factors.   They are: (1) the similarity of the marks, (2) the
11  relatedness of the two companies' products, (3) the marketing
12  channels used, (4) the strength of the mark, (5) Defendant's intent
13  in selecting the mark, (6) evidence of actual confusion, (7) the
14  likelihood of expansion into other markets, and (8) the degree of
15  care likely to be exercised by purchasers.   GOTO.com, 202 F.3d at
16  1205 (citing AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49
17  (9th Cir. 1979)).   The test is "pliant;" not all factors need be
18  met, and some factors are more important than others.   Id. (citing
19  Brookfield Communications, 174 F.3d at 1054).
20
21           **a.   Similarity of the marks**
22       The marks in question are identical.   Defendant admits that it
23  leaves the original marks on the automobiles after it stretches
24  them.   See Def.'s Answer at ¶ 16.[4]
25  _____
26  [4]     Plaintiff complains that Defendant has made a counterfeit
   "Lincoln" name badge for the rear section of its limousines that
   misspells the name Lincoln as "Linooln."   See Pl.'s Mem. P. & A. at
27  5:22, 10 n. 4; Pl.'s Reply at 19 n. 8.   Plaintiff refers to a
   photograph taken of one of Defendant's Limousines made from a
28                                              (continued...)

8

1

    **b. Relatedness of the products**

2    There is no question here that Defendant substantially

3 modifies the base vehicles it purchases from Plaintiff's dealers.

4 See, e.g., Compl. at Ex. C. The Court must examine whether

5 Defendant's limousines are closely-enough related to Plaintiff's

6 base vehicles that the relevant "purchasers" of Defendant's product

7 are likely to be confused into believing Plaintiff is the source of

8 the limousine. In other words, Plaintiff must prove that relevant

9 consumers are likely to view the original badges on Defendant's

10 limousine conversions as indicating the source of the stretch

11 limousine, not merely the source of the base vehicle. Plaintiff

12 has failed to offer any evidence on this crucial question.

13

14      **i. The verified Complaint does not provide**

15        **sufficient evidence on this point**

16    There are three evidentiary methods for proving likelihood of

17 confusion: (1) survey evidence; (2) evidence of actual confusion;

18 and (3) "argument based on an inference arising from a judicial

19 comparison of the conflicting marks themselves and the context of

20 their use in the marketplace." See Hewlett Packard Co. v. Repeat-

21 O-Type Stencil Manuf. Corp., 34 U.S.P.Q. 2d 1450, 1453 (N.D. Cal.

22 1995) (citing McCarthy, § 23.20 [2], at 23-133). Plaintiff relies

23

24     [4](...continued)

25 Lincoln Navigator, attached to the Complaint at Ex. D, p. 24. At
first glance, the "C" in "Lincoln" appears to be closed. Upon a

26 closer inspection, however, the closed portion of the "C" is the
black background underlying all of the letters in the badge. The

27 apparent misspelling is caused by the photograph's poor distinction
between the black background and the metallic letters. Thus, this

28 is not an altered badge, but rather an original badge that
Defendant leaves on the vehicle post-modification.

1   on the third method to meet its burden.  <u>See</u> Pl.'s Reply at 11:25-
2   28.  We focus on the context of the use of those marks in the
3   marketplace.

4

5        Plaintiff merely cites generally to its verified Complaint to
6   establish the context of the use of the marks in the marketplace.
7   Reading the verified Complaint as the Declaration of Ms. McFee,
8   Plaintiff nonetheless fails to offer competent evidence on this
9   point.  The Complaint contains very little information on the use
10  of original trademark badges in the limousine market.  It shows
11  that most limousine manufacturers, including Defendant, sell many
12  of their limousines for use in the livery rental business, where
13  the initial purchaser is not the ultimate consumer, and simply
14  concludes that "[s]uch ultimate consumers are particularly likely
15  to be confused by Defendant's misappropriation of the Ford
16  trademarks and to believe that Defendant's limousines are endorsed
17  by or affiliated with Ford," and that Defendant's practice of
18  leaving the badges on the converted limousines causes such
19  confusion.  <u>See</u> Compl. at ¶¶ 19-20.

20

21       There are several problems with this evidence.  First, the
22  Complaint is verified only "to the best of [Ms. McFee's] knowledge,
23  information, and belief," with no indication of what facts are
24  verified on personal knowledge, and what is merely alleged on
25  information and belief.  <u>Id.</u> at 26.  Furthermore, even if the
26  verification was stated to be solely on personal knowledge, the
27  statements are speculation and lack foundation as to how the
28  declarant has such personal knowledge.  The only foundation

1 | provided is that Ms. McFee is counsel at one of Plaintiff's
2 | subsidiaries; there is not even any information about what Ms.
3 | McFee or that subsidiary does, and if it has anything to do with
4 | the limousine market.

5 |

6 | **ii.  Plaintiff's cases are distinguishable**

7 | Plaintiff also attempts to analogize this case with others
8 | where after-market product modifiers were found to have infringed
9 | the trademark of the base product's manufacturer.  Plaintiff argues
10 | these cases hold that "a trademark holder has the right to prevent
11 | the retention of its marks on goods that have been modified or
12 | altered before their ultimate sale to consumers."  The retention of
13 | the original mark must still be likely to cause confusion, however.
14 |

15 | Rolex Watch, U.S.A., Inc. v. Michel Co., 179 F.3d 704 (9th
16 | Cir. 1999), and Rolex Watch USA, Inc. v. Meece, 158 F.3d 816 (5th
17 | Cir. 1998) dealt with modification of Rolex watches to replace
18 | genuine internal Rolex parts with non-Rolex reproduction parts and
19 | also to add diamonds to the watch casing, band, and dial.  The
20 | Defendants sold the modified watches with the original Rolex mark
21 | still displayed; injunctions against these sales were upheld.  In
22 | both of those cases, a likelihood of confusion was apparent,
23 | however.  A purchaser of a watch containing modified internal parts
24 | will likely not know the watch has been modified, and thus is
25 | likely to be confused into believing the watch is a genuine,
26 | unaltered Rolex.  While a consumer certainly can see diamonds on
27 | the dial, case, and band of a modified watch, confusion still was
28 |

11

1  likely because genuine Rolex watches are also available with
2  diamond dials and bezels.  See 158 F.3d at 818.

4      In this case, the modifications to Plaintiff's base vehicles
5  are apparent, unlike a watch with substituted internal parts.  In
6  contrast to the Rolex cases, there is no evidence here that
7  Plaintiff makes similarly altered vehicles or that the public
8  believes it does.

10     Plaintiff also cites Bulova Watch Co. v. Allerton Co., 328
11  F.2d 20 (7th Cir. 1964) on this point.  There the court found that,
12  although the defendant's modification of the Bulova watches (by
13  putting a genuine Bulova movement in a non-Bulova case) was
14  substantial enough to render the product no longer a true Bulova,
15  the fact was not obvious.  Thus, consumers were likely to be
16  confused into believing that the watch was not modified by a third
17  party, but instead was a genuine Bulova.  See 328 F.2d at 24.  The
18  alterations to Plaintiff's products, the vehicles stretched into
19  limousines, are readily visible, however.

21     Plaintiff also claims Defendant's practice of keeping the
22  original trademark badges on its limousine conversions constitutes
23  infringement because Plaintiff does not have the ability to control
24  the quality of Defendant's products.  See Pl.'s Mem. P. & A. at 12-
25  13 (citing Warner-Lambert Co. v. Northside Dev. Corp., 86 F.3d 3, 5
26  (2nd Cir. 1996) (second-hand sale of stale Halls cough drops);
27  Shell Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104 (4th Cir.
28  1991) (sale of contaminated Shell oil); and Adolph Coors Co. v. A.

12

1  Gunderson & Sons, Inc., 486 F. Supp. 131 (D. Colo. 1980) (sale of
2  stale Coors beer).  The goods in these cases were all defective in
3  some way because they did not comply with the manufacturer's
4  quality standards, yet were being marketed to the public as
5  genuine.  These cases are inapposite because Plaintiff has not
6  shown that the public believes Defendant's limousines are genuine
7  Ford cars, as opposed to limousine conversions made from Ford cars.
8
9      Plaintiff has failed to show that its base vehicles are
10 related closely to Defendant's limousines in the minds of
11 consumers.
12
13          c.   Marketing channels used
14      Plaintiff claims that Defendant sells its limousines through
15 the same marketing channels as Plaintiff's authorized converters,
16 thus making confusion more likely.  See Pl.'s Mem. P. & A. at 11-
17 12.  The limousine companies that buy the vehicles from modifiers
18 are not likely to be confused, however.  The purchasers of a
19 stretch limousine, which markets for roughly $20,000 more than the
20 base vehicle, see Torres Decl. at ¶ 7, are likely to pay great
21 attention to the source of the vehicle and are unlikely to be
22 confused.  See Brookfield Communications, 174 F.3d at 1060.
23 Moreover, Plaintiff has identified the consumer who rents a
24 limousine as the party likely to suffer confusion, not the
25 purchaser of the vehicle.  See Part III.A.2.g infra.
26
27      Plaintiff does not manufacture stretch limousines.  While
28 Plaintiff does authorize vehicle modifiers through its QVM program,

1  Plaintiff prevents the relevant consuming public from knowing which
2  converters it has authorized by prohibiting the QVM members from
3  displaying the QVM logo in a readily visible place.  See Pl.'s Mem.
4  P. & A. at 25:25-6:1.  Thus, the parties' products are not sold
5  through similar marketing channels, and this factor does not favor
6  granting a preliminary injunction.

7

8              d.    Strength of the marks

9       The relevant marks are strong marks which are well advertised.
10 See Compl. at ¶ 13.  Defendant does not dispute this.

11

12             e.    Defendant's intent

13      Although Plaintiff claims Defendant has intentionally copied
14 its protected marks with the intent to deceive consumers into
15 thinking its limousines were made by Ford, see Pl.'s Mem. P. & A.
16 at 16:19-17:7, Plaintiff has offered no evidence from which to
17 infer such intent.  While the marks on Defendant's limousines are
18 identical to Plaintiff's marks, Plaintiff has shown only that
19 Defendant left Plaintiff's existing marks in place after it
20 converted the vehicles.  Contrary to Plaintiff's suggestion, an
21 intent to deceive consumers into believing that its limousines are
22 made by Plaintiff is not the only logical reason for Defendant to
23 maintain the existing badges.  Defendant's explanations are equally
24 plausible: avoiding unnecessary costs by not altering areas that
25 are not affected by the stretching (for example, having to make new
26 hubcaps because the Lincoln "star" logo is imbedded in the stock
27 hubcaps), and because it is the long-standing industry standard to
28

                                  14

1 │ leave the badges on the cars unless the buyer requests they be
2 │ removed.  See Def.'s Opp'n at 4, 24.

3 │

4 │     Plaintiff also argues that the only logical reason for
5 │ Defendant to have adopted its now-abandoned "VQM" mark is to create
6 │ confusion with "QVM."  As discussed above, however, Plaintiff has
7 │ not established "QVM" as a protectable trademark.

8 │

9 │          f.    Evidence of actual confusion and likelihood of
10 │               expansion

11 │     Plaintiff has not put forth any evidence of actual confusion.
12 │ Neither party discusses the likelihood of expansion factor in its
13 │ papers.

14 │

15 │          g.    Degree of care likely to be exercised by purchasers
16 │     Plaintiff defines the relevant purchasing public not as the
17 │ buyers of the limousines themselves, but rather as those who rent
18 │ the vehicles from a limousine company.  See Pl.'s Mem. at 15:15-
19 │ 16:17.  The nature of such limited rental use generally means that
20 │ the "purchasers" exercise a lower degree of care in determining
21 │ whether Defendant's limousines are made by Ford.  This in turn
22 │ makes confusion between brands (here, Ford versus Ultra) more
23 │ likely than if the "purchasers" were considering buying a limousine
24 │ themselves or spending a more substantial amount of time in it than
25 │ an occasional trip to the airport or an evening's entertainment.
26 │ ///
27 │ ///
28 │

                                15

1    Plaintiff has not shown a likelihood of success on the merits
2  of its trademark infringement and related claims because it has
3  failed to show a likelihood of confusion.  Plaintiff fails to offer
4  any evidence from which to infer that purchasers are likely to
5  associate a stretch limousine with the maker of the base vehicle.
6  It is equally plausible, at least in the absence of evidence to the
7  contrary, that purchasers know that no American car manufacturer
8  makes stretch limousines and that the converted vehicles are the
9  work of a third-party converter, such as Defendant.  See Def.'s
10  Opp'n at 4:9-16.

11

12          **3.    Likelihood of confusion regarding Plaintiff's other**
13                 **asserted grounds for a preliminary injunction**

14    Aside from the claim that Defendant is infringing Plaintiff's
15  trademarks by leaving the original badges on the post-conversion
16  vehicles, Plaintiff claims it is entitled to a preliminary
17  injunction on five additional grounds: (1) Defendant's use of "QVM"
18  as a badge on its limousines, (2) Defendant's use of the
19  confusingly-similar mark "VQM" on its limousines, (3) its use of
20  the confusing "Ultra Navigator" badge on its limousines converted
21  from Lincoln Navigators, (4) its advertising regarding
22  certification, and (5) its advertising itself as the "World's
23  Largest Manufacturer of Navigators, Excursions, and Hummers."  See
24  Pl.'s Reply at 2.

25

26    As discussed above, Plaintiff has failed to establish that
27  "QVM" is a valid trademark.  Thus, it has not shown a likelihood of
28  success on its claim that Defendant's use of that mark is trademark

16

1  infringement.  Furthermore, because "QVM" has not been established
2  as a valid mark, Plaintiff cannot prevail on its claim that "VQM"
3  is confusingly similar to a protected mark.

4

5      "Navigator" is a valid mark.  As opposed to the other badges
6  that Defendant simply leaves in place on its limousines post-
7  conversion, Defendant has made its own mark incorporating
8  Plaintiff's protected mark by placing the word "Ultra" in close
9  proximity to the original "Navigator" badge on the tailgate of its
10 limousines converted from Lincoln Navigators.  See Compl. at Ex. D,
11 p. 23.  The proximity of these badges is likely to confuse
12 consumers into believing that the name of the vehicle is "Ultra
13 Navigator."  This makes it much more likely that a consumer may
14 view the limousine not as a base Navigator that has been stretched
15 by a third party modifier, but rather as an original creation of
16 Ford.  The "Ultra Navigator" badge is a use of Plaintiff's
17 trademark that is likely to confuse.

18

19     In its Reply, Plaintiff includes a request that Defendant be
20 enjoined from falsely advertising itself as "[t]he only certified
21 long car dealer in the country," as "Crash test N.H.T.S.A., D.O.T.,
22 V.Q.M. Certified," and as the "World's Largest Manufacturer of
23 Navigators, Excursions, and Hummers."  See Pl.'s Reply at 2:9-13.
24 Plaintiff did not argue this claim in its Memorandum in support of
25 the Motion, however.  Plaintiff's moving papers seek an injunction
26 only on the basis of trademark infringement and false designation
27 of origin.  To the extent that the advertisements regarding
28 certification and Defendant's claim to be the world's largest

17

1 | manufacturer of Navigators and Excursions constitute trademark
2 | infringement, however, such claims are within the scope of this
3 | Motion.
4 |
5 |    Defendant's advertisement that it is the only certified long-
6 | car dealer, and is N.H.T.S.A., D.O.T., and V.Q.M. certified, does
7 | not raise any trademark infringement issues because none of
8 | Plaintiff's valid trademarks are used in such statements.
9 | Defendant's claim that it is the world's largest manufacturer of
10 | Navigators and Excursions directly implicates Plaintiff's valid
11 | trademarks in those model names, however.  Such use is likely to
12 | confuse.  Plaintiff has shown a likelihood of confusion as to
13 | Defendant's advertisement that it is a manufacturer of Navigators
14 | and Excursions.
15 |
16 | **B.   Dilution**
17 |    Plaintiff's second claim for relief in its Complaint is for
18 | federal trademark dilution under 15 U.S.C. § 1125(c).  See Compl.
19 | at ¶¶ 30-37.
20 |    [I]njunctive relief is available under the Federal Trademark
     | Dilution Act if a plaintiff can establish that (1) its mark is
21 | famous; (2) the defendant is making commercial use of the mark
     | in commerce; (3) the defendant's use began after the
22 | plaintiff's mark became famous; and (4) the defendant's use
     | presents a likelihood of dilution of the distinctive value of
23 | the mark.
24 | Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 873-74 (9th Cir.
25 | 1999) (citing Panavision Int'l. L.P. v. Toeppen, 141 F.3d 1316,
26 | 1324 (9th Cir. 1998)).  A likelihood of confusion is not necessary
27 | to prove a claim for dilution.  See 15 U.S.C. § 1127.
28 | ///

### 1.   Famousness of the marks

The requirement that a mark be "famous" serves the important purpose of limiting the class of trademarks entitled to the strongest form of trademark protection "in a manner designed to minimize undue impact on other uses." Avery Dennison, 189 F.3d at 875.  To satisfy this element, "a mark [must] be truly prominent and renowned." Id. (quoting I.P. Lund Trading ApS v. Koehler Co., 163 F.3d 27, 46 (1st Cir. 1998) (quoting 3 McCarthy, § 24.91)). Although marks need not be registered to be famous, something more than inherent or acquired distinctiveness is required. See Avery Dennison, 189 F.3d at 875, n. 5.  Thus, because Plaintiff has not even established distinctiveness for the "QVM" mark and the Lincoln grille, they can not be famous marks. See Part III.A.1 supra.

"Ford" and "Lincoln" are undoubtedly famous marks, as are their respective logos.  Defendant does not contest the famousness of Plaintiff's registered marks.

### 2.   Commercial use
#### a.   Use of the original badges on the converted limousines

"Commercial use under the Federal Trademark Dilution Act requires the defendant to be using the trademark as a trademark, capitalizing on its trademark status." Avery Dennison, 189 F.3d at 880 (citing Panavision, 141 F.3d at 1325).  Plaintiff has failed to show that Defendant is using the original badges on the converted limousines as trademarks.  In other words, Plaintiff has not shown that the Ford, Lincoln, Town Car, Navigator, and Excursion badges

19

1 | Defendant leaves on its converted vehicles are used to identify the
2 | source of the converted vehicle, as opposed to the source of the
3 | base vehicle.  If consumers know, as Defendant alleges, that
4 | limousines are not made by Ford, but instead are converted by
5 | third-parties such as Defendant, then the badges left on the
6 | converted vehicles do not indicate the source of the limousine.
7 | This gap in Plaintiff's evidence dooms its dilution claim as to
8 | Defendant's maintenance of the original badges on the post-
9 | conversion limousines.

10 |

11 |      **b. "Ultra Navigator" and "world's largest manufacturer"**
12 |        **advertisements**

13 |    In using the "Ultra Navigator" badge and in advertising that
14 | it is the world's largest manufacturer of Navigators and
15 | Excursions, Defendant is using the marks as a source identifier.
16 | By placing "Ultra" next to "Navigator" on the converted vehicle,
17 | Defendant creates the impression that it is one badge, with the
18 | word "Ultra" modifying the name "Navigator."  This implies that
19 | Ultra is the maker, or source, of the Navigator, instead of being
20 | the source of the conversion of a vehicle originally made by
21 | Plaintiff.  Defendant's "world's largest manufacturer"
22 | advertisement also uses Plaintiff's "Navigator" and "Excursion"
23 | marks as source identifiers: it states Defendant is the
24 | manufacturer (i.e., source) of these Navigators and Excursions.
25 | ///
26 | ///
27 | ///
28 | ///

1      **3.    Timing of Defendant's use in relation to when the marks**
2              **became famous**

3          There is no evidence in the record from which to determine
4    when the marks "Navigator" and "Excursion" became famous.
5    Defendant does not claim that it used those marks in its "world's
6    largest manufacturer" advertisement and its "Ultra Navigator" badge
7    before they became famous, however.

8

9      **4.    Likelihood of dilution**

10         Plaintiff relies on the "blurring" form of dilution.  <u>See</u>
11   Pl.'s Mem. P. & A. at 19.  "Blurring occurs when a defendant uses a
12   plaintiff's trademark to identify the goods or services, creating
13   the possibility that the mark will lose its ability to serve as a
14   unique identifier of the plaintiff's product."  <u>Panavision</u>, 141
15   F.3d at 1326 n. 7 (citations omitted).  Defendant's use of the
16   "Ultra Navigator" mark and its advertisement stating it is the
17   world's largest manufacturer of Navigators and Excursions both meet
18   this requirement.  These uses of Plaintiff's famous marks imply
19   that there is not a single source for Navigators and Excursions
20   (Plaintiff), but rather that Defendant is another source for those
21   vehicles.  Thus, Plaintiff has shown a likelihood of success on the
22   merits of its dilution claim as to the "Ultra Navigator" badge and
23   Defendant's advertisement of itself as the world's largest
24   manufacturer of Navigators and Excursions.

25

26   **C.   Balance of the Hardships**
27         As mentioned above, a plaintiff generally may obtain a
28   preliminary injunction, even if it has failed to show a likelihood

                                    21

1   of success on the merits, if it has shown the existence of "serious

2   questions going to the merits" and that "the balance of hardships

3   tips sharply in his favor."  Plaintiff here has relied completely

4   on the presumption of irreparable harm in a trademark case arising

5   from a likelihood of success on the merits and has neglected to

6   argue that the balance of hardships tips sharply in its favor

7   absent application of this presumption.  Thus, even assuming

8   Plaintiff has raised serious questions going to the merits of its

9   claims regarding Defendant's practice of keeping Plaintiff's

10  original trademarks on its post-conversion limousines, it does not

11  warrant a preliminary injunction on these grounds because it has

12  not established that the hardships strongly favor Plaintiff.

13

14      Plaintiff is entitled to the presumption of irreparable harm,

15  and the resulting melding of that requirement with likelihood of

16  success on the merits as described in GOTO.com, regarding

17  Defendant's use of the "Ultra Navigator" badge and Defendant's

18  "world's largest manufacturer" advertisement.  Plaintiff has shown

19  a likelihood of success on the merits of its trademark infringement

20  and related claims, as well as its dilution claim, in relation to

21  this conduct.  Thus, Plaintiff is entitled to a preliminary

22  injunction against those acts.  Plaintiff has failed to show

23  irreparable harm as to the rest of its case because it has failed

24  to establish the presumption by failing to show a likelihood of

25  success on the merits, however.

26  ///

27  ///

28  ///

1 | **D.   Defendant's Unclean-Hands Defense**

2        Defendant argues that Plaintiff is barred from equitable

3 relief by the doctrine of unclean hands.  See Def.'s Opp'n at 20-

4 21.  Defendant argues that Plaintiff is engaged in anti-competitive

5 practices by preventing non-QVM members from advertising in

6 limousine-industry publications.  Id.  The only support Defendant

7 offers for such a claim, however, is the April 2000 editorial of

8 Ric Cohen, editor of Limousine Digest.  See Torres Decl. at Ex. 4.

9 The article provides no admissible evidence, only speculation based

10 on hearsay.  Thus, Defendant has failed to establish a factual

11 basis for its claim.

12

13 | **E.   Bond**

14            No restraining order or preliminary injunction shall issue
             except upon the giving of security by the applicant, in such

15           sum as the court deems proper, for the payment of such costs
             and damages as may be incurred or suffered by any party who is

16           found to have been wrongfully enjoined or restrained.

17 Fed. R. Civ. 65(c).  "The amount of bond is within the Court's

18 discretion. . . .  The amount will generally be what the court

19 deems sufficient to cover loses and damages incurred or suffered by

20 the party enjoined if it turns out that the injunction should not

21 have been granted."  DEP Corp. v. Opti-Ray, Inc., 768 F. Supp. 710,

22 718 (C.D. Cal. 1991) (citing Washington Capitols Basketball Club,

23 Inc. v. Barry, 304 F. Supp. 1193 (N.D. Cal. 1969)).  See also

24 Fierberg v. Hyundai Motor America, 44 U.S.P.Q. 1305 (C.D. Cal.

25 1997) ("The Court has broad discretion to require whatever amount

26 serves the interests of justice").

27 ///

28 ///

1   The potential harm to Defendant of the narrow preliminary

2   injunction the Court now issues should such an injunction later be

3   determined to be issued in error is minimal.  Accordingly, the bond

4   amount to compensate Defendant for such a loss need not be large.

5   A bond in the amount of $5,000 is sufficient.

6

7                        **IV.   Conclusion**

8   Plaintiff has failed to show a likelihood of success on the

9   merits of either its trademark infringement and related claims or

10  its federal dilution claim as to Defendant's maintenance of the

11  original badges on its post-conversion limousines.  It also has

12  failed to show that "QVM" is a valid, protectable trademark.

13  Furthermore, Plaintiff has not established that the balance of

14  hardships tips sharply in its favor because it relies solely on the

15  presumption of irreparable harm in trademark cases that follows a

16  showing of a likelihood of success on the merits.  Thus, no

17  preliminary injunction is appropriate on those grounds.

18

19  Plaintiff has shown a likelihood of success on the merits of

20  its infringement and dilution claims as to Defendant's use of the

21  "Ultra Navigator" badge and its advertisement that it is the

22  world's largest manufacturer of Navigators and Excursions, however.

23  Irreparable harm is thus presumed on these claims.

24

25  Therefore, Defendant is enjoined during the pendency of this

26  case from using its "Ultra Navigator" badge on its limousine

27  conversions, and from advertising itself as the world's largest

28  manufacturer of Navigators and Excursions.  Pursuant to Federal

1 | Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the
2 | amount of $5,000.
3 |
4 | IT IS SO ORDERED.
5 |
6 |
7 | Dated: *July 11, 2000*
8 |                                    VIRGINIA A. PHILLIPS
                                        United States District Judge